# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR16-4090-LTS |
| vs. | **ORDER** |
| SCOTT WETHERELL, | |
| Defendant. | |

This matter is before me on defendant Scott Wetherell's motion (Doc. No. 45) for judgment of acquittal or, in the alternative, a new trial. The Government has filed a resistance (Doc. No. 46).

## I. BACKGROUND

The indictment (Doc. No. 1) charged Wetherell with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. Prior to trial, he requested both a buyer-seller jury instruction and an instruction regarding the lesser-included offense of conspiracy to possess methamphetamine. I reserved ruling on both instructions until the evidence had been submitted. Doc. No. 33 at 2. Trial began on January 4, 2017. At the close of evidence I rejected the buyer-seller instruction:

> Eighth Circuit case law on the buyer-seller instruction revolves around whether there is evidence that the defendant intended to obtain drugs for personal use. Back in 1994, *Campbell*, 35 F.3d 1255, approved a buyer-seller instruction, and it revolved around the issue of whether there was evidence that it was an isolated transaction for personal use. In *Romero*, 150 F.3d 821, the court talked about the fact that if the quantities are too high to support a suggestion of personal use, then there's no buyer-seller instruction that would be appropriate. And *Tillman* is a case I've relied on and some other cases. It's from 2014. It's at 765 F. 3d 831. The court

again discusses the fact that if the transaction was more than a simple isolated transaction with personal use quantities the buyer-seller instruction's not appropriate. The other thing I find interesting about *Tillman* is that it further discusses the fact that the standard conspiracy instructions that we typically give in conspiracy to distribute cases basically covers the concept of buyer-seller. And here I find instruction 5 telling the jury what a conspiracy is and what it means to be part of a conspiracy, especially element 2 of that instruction along with instruction 4 which Mr. Hansen referenced, which tells the jury what it means to distribute narcotics and basically makes it clear that buying a small amount for personal use is not distribution. I find that even if I'm wrong about whether or not a buyer-seller instruction should be given, I find that the Court's existing instructions adequately cover the concept. So while I don't -- I'm pretty firm on the fact that the evidence here doesn't support any argument that Mr. Wetherell intended to obtain the drugs at issue for his own personal use, even if there was such evidence, I find that the Court's instructions already adequately convey in defining what it means to be part of a conspiracy and what it means to distribute adequately conveys the concepts in any event. So I'm going to reject the request for a separate buyer-seller instruction.

Tr. at 175-76.

Regarding the lesser-included instruction, I heard argument at the pretrial conference and ruled as follows:

> I'm not going to give the lesser included instruction at the beginning of the case. . . First of all, I agree with the government that both in *Jangula* and also in United States versus *Miller* which is 939 F.2d 605 the circuit has been pretty clear that there has to be some evidence that if the defendant possessed or conspired to possess the drugs that the purpose was personal use. Given my understanding of what the quantity is which I know Mr. Alexander has said is about a pound and that's my understanding based on my review of the exhibits in advance of today, that's a lot of methamphetamine.

Tr. at 6-7. At the close of evidence I revisited the issue:

> I am going to decline to give the lesser included offense instruction. Everybody seems to agree on the general legal framework, and under *Jangula* which is 735 F.3d 1054, *Miller*, 939 F.2d 605, it's clear, number one, the Eighth Circuit has characterized it as a rare instance in which

2

> conspiracy to possess would be a lesser included of conspiracy to distribute narcotics. And both of those cases and other cases I've looked at on this issue talk about there has to be some evidence that the defendant intended to possess the drugs for personal use. There's no evidence that's been presented in this record that Mr. Wetherell intended to possess the drugs in the Fed Ex package for his own personal use. If anything, the evidence is he wanted Lovan to come pick the package up and get it out of there before Mr. Wetherell returned home. I agree with Mr. Alexander that I think the most telling issue here is the fact that Mr. Wetherell expected to receive $300. While he may not have known exactly what was in the package, the testimony was a gram typically costs a hundred dollars, and if you're going to receive $300 just for letting somebody use your address and you know -- as Mr. Wetherell admitted in his interview with law enforcement, he knew it contained methamphetamine, if he's going to get $300 out of the deal just for allowing the package to be delivered to his address, that's pretty compelling evidence that it's a significant quantity of methamphetamine and not a personal use quantity. I don't think there's any rational reason to believe a drug dealer would take a loss and have 2 grams delivered to Mr. Wetherell's home and pay $300 to Mr. Wetherell just for the opportunity to have a couple of grams delivered. So I think the $300 is very telling here. Mr. Wetherell knew that Mr. Lovan was a drug dealer. He'd purchased methamphetamine from him in the past. He acknowledged in his interview that he knew this package was going to contain methamphetamine, and he expected to be paid $300. There's simply no evidence that Mr. Wetherell intended to possess or intended that the drugs that were arriving at his house were going to be simply personal use narcotics. And instead I think it's clear from the evidence if the jury finds that he was part of a conspiracy it was a conspiracy to distribute, not simply a conspiracy to possess. So I am going to reject the proposed lesser included offense instruction. I will not be instructing the jury on the offense of conspiracy to possess methamphetamine. I think the other instruction that the defense had proposed was a buyer-seller instruction.

Tr. at 170-72.

Also at the close of evidence, Wetherell requested a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. I reserved ruling on Wetherell's oral motion, stating:

3

> Because I have so far reserved ruling and if you do plan to file a written motion, I'd certainly like to hear and take your arguments into consideration before I rule on the Rule 29 motion. So I will continue to reserve ruling on that motion. The Rule 29 motion along with any motion for new trial under Federal Rule of Criminal Procedure 33 would have to be filed within 14 days of today's date.

Tr. at 221. On January 5, 2017, the jury returned a verdict (Doc. No. 41) finding Wetherell guilty.

## II.    FACTUAL FINDINGS

Trial was very short and neither party disputes the facts that could have been found by the jury. *See* Doc. No. 45, 46. The Government called three witnesses: Special Agents Michael Minten and Nathan Ewalt of the Iowa Division of Narcotics Enforcement (DNE) and criminalist Kelsey Rusbarsky of the Iowa Division of Criminal Investigation (DCI). The Government also provided various physical exhibits, such as the methamphetamine shipped to Wetherell's address, the associated packaging, a recorded interview with Wetherell (Gov. Ex. 3) and cell phone logs. Wetherell offered evidence from the cell phone of Lou Lovan, Wetherell's co-conspirator. *See* Def. Ex. C.

This evidence showed that Wetherell is a truck driver from Sutherland, Iowa. He was friends with, and occasionally bought personal use methamphetamine from, Lou Lovan. The text message evidence showed that Lovan purchased methamphetamine from a contact (Veing) in California. On one particular trip to California, Lovan purchased a pound of methamphetamine, which the lab analysis confirmed contained over 381.59 grams of methamphetamine actual.

Lovan made a deal with Wetherell to send the methamphetamine to Wetherell's address in Iowa via FedEx. Lovan hid the methamphetamine in two candles before shipping it. Law enforcement discovered the methamphetamine at the FedEx shipping center in Omaha, Nebraska, and decided to continue the delivery in an attempt to "sting" the recipient. Thus, a law enforcement officer posing as a FedEx driver dropped the

4

package off at Wetherell's residence and the residence was placed under surveillance. Eventually, Lovan arrived at the residence and took possession of the package. Law enforcement officers then intervened and took Lovan into custody.

Officers continued to wait at the residence. When Wetherell returned home, agents asked if he would answer some questions. Wetherell agreed. During the recorded interview that followed, Wetherell admitted that he knew Lovan was a methamphetamine dealer, that he knew Lovan would be sending methamphetamine to his address and that Lovan had agreed to give him $300 in exchange for allowing the methamphetamine to be delivered to his residence. Wetherell also acknowledged he had used methamphetamine he received from Lovan. However, Wetherell denied any other involvement in Lovan's operation.

## III. DISCUSSION

### A. *Motion for Judgment of Acquittal*

#### 1. *Standard*

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The Government, as the prevailing party, is entitled to have the evidence viewed in the light most favorable to it. *See United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *Id*. Moreover, courts "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id*. (quoting *United States v. Serrano-Lopez*, 366

F.3d 628, 634 (8th Cir. 2004)). Additionally, courts should not reconsider the credibility of the witnesses, as that is a task for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

### *2. Arguments*

Wetherell argues that he is entitled to a judgment of acquittal because the evidence does not support the conviction. Specifically:

> A "reasonable minded jury" could not find proof beyond a reasonable doubt that Mr. Wetherell knowingly joined a conspiracy to distribute methamphetamine. Although the evidence at trial showed that Mr. Wetherell allowed Mr. Lovan to use his address in exchange for a small sum of money, it also established that Mr. Wetherell's involvement did not rise to the level of knowing involvement in a conspiracy to distribute. Mr. Wetherell had no role in the planning of Mr. Lovan's trip to California, and there was no evidence presented that he knew anything about Veing, the source for the methamphetamine. Mr. Wetherell did not fund Mr. Lovan's trip to California or his purchase of the methamphetamine. He did not know how much methamphetamine Mr. Lovan sent from California, and there was no direct evidence presented that he knew it was a significant quantity. Even after the package was shipped to his house, Mr. Wetherell did not pick up the package; Mr. Lovan did. Moreover, Mr. Wetherell did not have any information as to what Mr. Lovan intended to do with the methamphetamine – i.e., whether he planned to use it or distribute it to others. As Mr. Wetherell acknowledged in his recorded interview, he "hates to tell people no," Ex. 3 at 6:52-55, but his failure to say no to Mr. Lovan and his bad judgment do not turn him into a federal drug distribution conspirator. The Court should grant his renewed motion for judgment of acquittal.

Doc. No. 45 at 7. The Government responds:

> Here, the evidence squarely supports the jury's verdict. The government established that defendant conspired to distribute methamphetamine by knowingly and voluntarily agreeing to facilitate the shipment of methamphetamine for his former drug dealer, Lou Lovan, to eventually distribute for profit. By providing the necessary assistance, defendant would receive $300 from Lovan. (Gov. Ex. 3, at 4:25-4:40). While being

6

interviewed, defendant would often intentionally provide false and misleading responses to questions posed to him in order to minimize his knowledge and overall role in the conspiracy. After continuously being pressed to clarify inconsistencies in his statements, defendant slowly began to provide responses that showed his knowledge of and role in the conspiracy were far more extensive than he initially wanted to reveal. . . Therefore, the Court should deny defendant's renewed motion for judgment of acquittal. Defendant had raised these same arguments at trial but they were subsequently rejected by the reasonably minded jury. The evidence established a sufficient basis for defendant's conviction on the instant offense.

Doc. No. 46 at 11-12, 15.

### 3. Discussion

Wetherell contends that he was not a member of a conspiracy but, instead, made one mistake in agreeing to help Lovan. However:

> [A] defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy. *See Burgos*, 94 F.3d at 861; *Dunn*, 564 F.2d at 357; *Marsh*, 747 F.2d at 13. Proof of a defendant's involvement in a conspiracy may of course be demonstrated by direct or circumstantial evidence. *United States v. Mendoza*, 421 F.3d 663, 668 (8th Cir. 2005).

*United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006). Even a tacit agreement to participate in the conspiracy is sufficient to support a conspiracy conviction. *United States v. Johnson*, 439 F.3d 947, 954 (8th Cir.2006); *see also United States v. Cubillos*, 474 F.3d 1114, 1118 (8th Cir. 2007). Proof of supplying, or assisting in the supplying of a large quantities of drugs to a third party can be sufficient to show an intent to join or assist a distribution conspiracy. *United States v. Rodriguez-Ramos*, 663 F.3d 356, 362 (8th Cir. 2011). Additionally:

> Direct evidence of an explicit agreement is not necessary to prove a conspiracy; instead, a tacit understanding among co-conspirators may be, and often will be, inferred from circumstantial evidence. In many conspiracy cases there is no confession by the defendant or other direct

> proof that he agreed to the illegal act. However, the jury is free to consider all the evidence-direct and indirect-presented of the defendant's statements and actions. In addition, the jury may draw reasonable inferences from the evidence presented about what the defendant's state of mind was when he did or said the things presented in the evidence.

*United States v. Winston*, 456 F.3d 861, 866 (8th Cir. 2006)

As set out in the jury instructions, the Government was required to prove (1) that during the time period alleged for the conspiracy, starting in 2015 and through October 21, 2015, in the Northern District of Iowa, two or more persons reached an agreement or understanding to distribute methamphetamine; (2) that the defendant voluntarily and intentionally joined in the agreement or understanding; and (3) that at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding. Doc. No. 37.

The evidence establishes that Wetherell agreed to receive a shipment he knew to be methamphetamine from Lovan. Wetherell further agreed to return the shipment to Lovan with the implicit knowledge that Lovan would distribute the methamphetamine. The question under the first element is whether that constituted an agreement to distribute. As noted in the jury instructions: (1) the agreement need not be formal (*United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir.1995)) and (2) and the agreement need not involve all details (*United States v. Huggans*, 650 F.3d 1210, 1222 (8th Cir. 2011)). Based on the forgoing, the Government proved that there was an agreement to distribute methamphetamine. To be sure, Wetherell was a minor participant in the conspiracy. Indeed, it seems that he was set up by Lovan to be something of a patsy who would not consider the harsh consequences of receiving a large quantity of methamphetamine. However, this does not affect whether the Government proved the essential elements of the charge. Wetherell's own recorded statement established that he knew he was receiving a package from Lovan that would contain methamphetamine. Other evidence, including Wetherell's prior dealings with Lovan, demonstrates that he knew Lovan would

be distributing the methamphetamine once it arrived. The jury was entitled to find that two or more people entered into an agreement or understanding to distribute methamphetamine.

Similarly, the Government proved the second element, that Wetherell voluntarily joined the conspiracy. I give credence to the defendant's argument he is a "nice" guy who "hates to tell people no." Doc. No. 45-1 at 7. However, being nice or gullible is not a defense to a conspiracy charge. There is no evidence that Wetherell was forced, through duress or otherwise, to receive the methamphetamine package. Instead, he agreed to do so in order to help a friend and make $300. In hindsight, this was an idiotic choice. However, it was also a voluntary decision to join the agreement.

Finally, the Government proved that Wetherell knew the purpose of the conspiracy. Wetherell purchased methamphetamine from Lovan and knew that Lovan travelled to California to obtain methamphetamine. Wetherell communicated with Lovan during the trip, knew that Lovan was sending methamphetamine back to Iowa and agreed to accept $300 in exchange for letting Lovan use his address. The evidence supports the jury's verdict. Wetherell is not entitled to a judgment of acquittal.

### B. *Motion for New Trial*
#### 1. *Standard*

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court." *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (internal citations omitted). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776,

780 (8th Cir. 1992)). However, the court should grant a new trial only if "the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987). "The standard for granting a motion for new trial is more lenient than for a judgment of acquittal; the court is allowed to vacate any judgment if the interests of justice so require." *United States v. Dean*, 810 F.3d 521, 532 (8th Cir. 2015) (internal citations). However, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

When a motion for new trial is based on an argument that the court erred in failing to give a proposed instruction to the jury, the movant must show that failure to give the proposed instruction constituted an abuse of discretion and was prejudicial. *See United States v. Cruz-Zuniga*, 571 F.3d 721, 725 (8th Cir. 2009) (citing *United States v. Whitehead*, 176 F.3d 1030, 1037 (8th Cir. 1999).

### 2. *Lesser-Included Offense Instruction*

Wetherell argues that I erred by failing to give the lesser-included instruction of conspiracy to possess methamphetamine.

> In the Eighth Circuit, a defendant is entitled to a lesser-included-offense instruction when: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

*United States v. Dodd*, 473 F.3d 873, 876 (8th Cir. 2007).

Wetherell argues that he was entitled to the lesser-included offense instruction because, "although Mr. Lovan obviously agreed with Veing and possibly others to distribute methamphetamine, a jury could reasonably have concluded that the extent of Mr. Wetherell's agreement with Mr. Lovan was that he would help facilitate his possession." Doc. No. 45-1 at 9-10. In making this argument, Wetherell relies on *United States v. LaPointe*, 690 F.3d 434 (6th Cir. 2012), a case somewhat similar to the present situation in that one conspirator agreed to receive shipments of drugs. Having reviewed *LaPointe,* I agree with Wetherell he may well have been entitled to a lesser-included offense instruction under Sixth Circuit law. However, under Eighth Circuit precedent, (1) before the lesser-included instruction of conspiracy to possess can be given, there must be some evidence that the defendant merely sought to possess the contraband for personal use and (2) a lesser-included instruction is not appropriate if amount possessed exceeded a personal use quantity.

> Though less frequently, we have also applied the lesser-included-offense standard in drug conspiracy cases. *See United States v. Dodd*, 473 F.3d 873, 876–77 (8th Cir.), *cert. denied*, 550 U.S. 948, 127 S.Ct. 2280, 167 L.Ed.2d 1114 (2007); *United States v. Miller*, 939 F.2d 605, 609–10 (8th Cir.1991); *United States v. O'Meara*, 895 F.2d 1216, 1219–20 (8th Cir.), *cert. denied*, 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). The element differentiating the two conspiracy offenses is the object of the alleged conspiracy. Conspiracy to distribute or possess with intent to distribute requires proof that two or more people agreed to distribute a controlled substance. On the other hand, conspiracy to possess requires proof that the purpose of the agreement was only to possess a controlled substance. *Dodd*, 473 F.3d at 876. Consistent with our decisions in substantive possession cases, if there is no evidence "that the defendant sought to possess [the drugs in question] for personal use," then there is no evidentiary basis for an instruction that he conspired—that is, agreed with others—to commit only the lesser included conspiracy offense. *Miller*, 939 F.2d at 609; *see O'Meara*, 895 F.2d at 1220.

*United States v. Jangula*, 735 F.3d 1054, 1057 (8th Cir. 2013).

Wetherell received one shipment of methamphetamine. It is a reasonable inference that Wetherell knew he would receive a relatively large quantity of methamphetamine based the amount of money he was to be paid and the manner of shipment, even if Lovan had not explicitly told him the exact quantity. There is simply no evidence that Wetherell could have believed that the methamphetamine shipment was merely for his own possession (or Lovan's mere possession). Under Eighth Circuit precedent, Wetherell was not entitled to a lesser included offense instruction.[1]

### 3. Buyer-Seller Instruction

Wetherell argues that I erred by not giving his proposed buyer-seller instruction. As set out above, I reserved ruling on Wetherell's request for this instruction until the close of evidence. I ultimately denied the request because I found that even a favorable view of the evidence would not support the instruction. Wetherell argues:

> In this case, the Court should have given the buyer-seller instruction because the evidence (specifically, Mr. Wetherell's recorded interview) showed that Mr. Wetherell purchased small quantities of methamphetamine for personal use from Mr. Lovan on several occasions. A buyer-seller instruction would have informed the jury that Mr. Wetherell's purchases from Mr. Lovan did not establish that he was a member of a conspiracy to

---

[1] The parties also dispute whether defendant can meet the fourth element outlined above, that proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense. Because the defendant cannot satisfy the third element, I need not reach the dispute regarding whether a jury could consistently find the defendant innocent of the greater but guilty of the lesser. *See Jangula*, 735 F.3d at 1057-58 ("By contrast, there was no evidence of an agreement between Jangula and any other person for the purpose of simply possessing marijuana, the lesser offense. . . Thus, the evidence would not have allowed a rational jury to find Jangula not guilty of the greater offense, conspiracy to distribute marijuana, and guilty of the lesser offense, conspiracy to possess. . . On this record, the district court did not err by refusing to give the requested instruction.").

distribute methamphetamine. The Court should also order a new trial on this basis.

Doc. No. 45-1 at 13.

"A defendant is entitled to a specific jury instruction conveying the substance of the request if it is timely, supported by evidence, and correctly states the law." *United States v. Tillman*, 765 F.3d 831, 834 (8th Cir. 2014). A "buyer-seller" instruction is "not supported by the evidence and thus 'not appropriate when there is evidence of multiple drug transactions, as opposed to a single, isolated sale.'" *United States v. Johnson*, 719 F.3d 660, 671 (8th Cir. 2013) (quoting *United States v. Hester*, 140 F.3d 753, 757 (8th Cir. 1998)). The Eighth Circuit has limited buyer-seller relationship cases to those involving "only evidence of a single transient sales agreement and small amounts of drugs consistent with personal use." *United States v. Boykin*, 794 F.3d 939, 948-49 (8th Cir. 2015). "Where the conspiracy involves large quantities of drugs and significant interaction between dealers and users over an extended period of time, the instruction is inappropriate." *United States v. Conway*, 754 F.3d 580, 592 (8th Cir. 2014).

This case, contrary to Wetherell's assertion, is not about the small quantities of methamphetamine he previously purchased from Lovan. Rather, this case involves one large shipment from Lovan to Wetherell. There is zero evidence in the record that Wetherell sought to buy or use the methamphetamine in the shipment. He readily acknowledged he was simply facilitating its arrival in Iowa for Lovan. Nothing about this arrangement fits the small-quantity, buyer-seller situation. I again conclude that a buyer-seller instruction was not appropriate.

## IV. CONCLUSION

For the reasons set forth herein, the defendant's oral motion for a judgment of acquittal, made during trial, along with his written motion (Doc. No. 45) for a judgment of acquittal and, in the alternative, motion for a new trial are **denied**.

**IT IS SO ORDERED.**

**DATED** this 28th day of February, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE